UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LUTRICIA VONCELE WEAVER,

    Plaintiff,

v.                                      Case No:   6:15-cv-1486-Orl-DNF

CAROLYN COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

## OPINION AND ORDER

Plaintiff, Lutricia Voncele Weaver, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382a(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments.  *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii).  If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled.  20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii).  If she meets this burden, she will be considered disabled without consideration of age, education and work experience.  *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work.  *Id*.  At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work.  20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f).  If the claimant can still perform her past relevant work, then she will not be found disabled.  *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience.  *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled.  *Id*.  In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant.  *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff protectively filed applications for DIB and SSI on November 21, 2011, alleging a disability onset date of January 19, 2012. (Tr. 209-22, 238). Plaintiff's claims were denied initially and upon reconsideration. (Tr. 121-31, 137-47). Plaintiff requested a hearing and on January 7, 2014, a hearing was held before Administrative Law Judge ("ALJ") Stephen C. Calvarese. (Tr. 31-70, 148-49). On January 31, 2014, the ALJ entered a decision finding that Plaintiff was not disabled. (Doc. 9-25). Plaintiff filed a request for review of the decision and, on July 20, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. 1-7, 8). Plaintiff initiated this case by Complaint (Doc. 1) on September 11, 2015. The parties having filed a joint memorandum setting forth their respective positions, this case is ripe for review.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 19, 2012, the alleged onset date. (Tr. 14). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease, morbid obesity, dysfunction major joint, hypertension, congestive heart failure, diabetes mellitus, asthma and hernia. (Tr. 14). At step three, the ALJ found that Plaintiff

did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15).

Before proceeding to step four, the ALJ found that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to "perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except [s]he can frequently climb, balance, stoop, kneel, crouch and crawl." (Tr. 15). At step four, the ALJ relied on the testimony of a vocational expert to find that Plaintiff was capable of performing her past relevant work as a "nurse assistant," "teacher aide II," "bus driver, school" and "correctional specialist." (Tr. 24). The ALJ concluded that Plaintiff had not been under a disability from January 19, 2012, through the date of the decision, January 31, 2014. (Tr. 25).

## II.     Analysis

Plaintiff raises four issues on appeal: (1) whether the ALJ applied the correct legal standards to the opinion of Dr. Goll; (2) whether the ALJ applied the correct legal standards to the opinion of Dr. Hatch; (3) whether the ALJ applied the correct legal standards to the opinion of Dr. Thomson; and (4) whether the ALJ applied the correct legal standards to Plaintiff's medication side effects. The Court will address each issue in turn.

### a)  Whether the ALJ applied the correct legal standards to the opinion of Dr. Goll.

Plaintiff argues that the ALJ erred in according treating physician Stephen R. Goll's opinion dated May 16, 2012, no weight because the ALJ "improperly played doctor" and arbitrarily substituted his own hunch or intuition for that of Dr. Goll's opinion. (Doc. 16 p. 13-14). Specifically, Plaintiff contends that the ALJ erred by noting that "additional testing subsequent to Dr. Goll's opinion does not support his limitations." (Doc. 16 p. 13). In addition, Plaintiff

contends that the ALJ's reliance on the opinion of Dr. Gillespy, who examined Plaintiff approximately four months before Dr. Goll, was improper. (Doc. 16 p. 14).

In response, Defendant argues that the ALJ properly weighed the opinion from Dr. Goll and that substantial evidence supports his assessment of the opinion. (Doc. 16 p. 14). In addition, Defendant argues that even if the ALJ had accorded great weight to Dr. Goll's opinion, the ALJ's ultimate finding would not be changed, as the ALJ posed a hypothetical to the vocational expert that reflected Dr. Goll's opinion findings and the vocational expert testified that such an individual could perform Plaintiff's past work as a teacher's aide. (Doc. 16 p. 19).

The record reflects that Plaintiff presented to Dr. Goll on April 4, 2012, for evaluation of her neck pain with bilateral arm, pain, thoracic spine pain, and lower back pain with bilateral leg pain. (Tr. 446). Dr. Goll's impression was:

      1. Cervical strain with bilateral upper extremity neuropathy/radiculopathy.
      2. Thoracic strain.
      3. Wedge compression deformity, probably chronic, T7.
      4. Lumbar strain with bilateral lower extremity neuropathy.
      5. Transitional L5-S1 level.

(Tr. 451). Dr. Goll opined that Plaintiff could not lift more than fifteen pounds and that she could not perform repetitive bending. (Tr. 452).

On May 16, 2012, Dr. Goll opined that Ms. Weaver had achieved maximum medical improvement and assigned permanent light duty restrictions with no lifting over twenty pounds (Tr. 489). He assigned Ms. Weaver a three-percent impairment rating for her body as a whole (Tr. 489).

In his decision, the ALJ explained his reasoning for giving no weight to Dr. Goll's May 2012 opinion as follows:

> Dr. Burkhart noted the claimant had a zero percent permanent impairment rating in relation to her reported bilateral knee pain and he related to her knees (Exhibit 7F/14, 9F/3-4). Additionally, in May 2012, Dr. Goll said the claimant had a permanent impairment rating of three percent and restricted her to light duty, specifically he said she could not lift greater than 20 pounds (Exhibit 9F). However, Dr. Goll's restriction of lifting no greater than 20 pounds is not supported by the benign testing noted above and is therefore given no weight. Furthermore, additional testing subsequent to Dr. Goll's opinion also does not support his limitations. In August 2012, the claimant had an MRI of her cervical spine that showed reversal of the upper cervical lordosis, disc bulge indents the anterior thecal sac at C3-4, broad-based disc bulge indents the anterior thecal sac at C4-6 and C6-7 and broad-based disc bulge indents the anterior thecal sac at C7-T1. Neural foramina were narrowed bilaterally. She also had NCV and EMG studies in August 2012 that were within normal limits and showed no evidence of a left upper extremity peripheral nerve lesion or left cervical radiculopathy (Exhibit 16F/50-56). Even though she consistently complained of numbness/tingling and neck and back pain, the claimant denied any of the symptoms during several emergency room visits (Exhibit 3F/20-40, 41-50). Additionally, the two nerve conduction studies she underwent were essentially normal and did not show evidence of severe radiculopathy or neuropathy. Furthermore, Dr. Gillespy examined the claimant prior to Dr. Goll and found that she could return to a full-range of work with no limitations. (Exhibit 5F/1-2).

(Tr. 22).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on

the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

In this case, the Court finds that the ALJ showed good cause for giving Dr. Goll's May 16, 2012 opinion "no weight." With specific citations to the record, the ALJ explained that he accorded "no weight" to Dr. Goll's opinion because test results in the record did not support Dr. Goll's limitation findings, because Dr. Goll's opinion was inconsistent with the record, particularly with the opinions of other physicians, and because despite Plaintiff's complaints of numbness/tingling in her neck and back, Plaintiff denied those symptoms during multiple emergency room visits. (Tr. 22). While Plaintiff alleges that the ALJ "improperly played doctor," the Court finds that the ALJ's analysis shows a thorough analysis of the record and sound reasoning for rejecting Dr. Goll's opinion.

In any event, as Defendant notes, even if the ALJ were to have given great weight to Dr. Goll's opinion and adopted his limitation finding that Plaintiff was incapable of lifting over twenty pounds, the ALJ's decision would not be disturbed. At the administrative hearing, the ALJ posed a hypothetical question to the vocational expert that contained greater limitations than contained in Dr. Goll's May 2012 opinion. (Tr. 66). Specifically, the ALJ asked the vocational expert to consider an individual limited to only occasional or frequent lifting of 15 pounds and no repetitive bending. (Tr. 66). The vocational expert testified that such an individual would still be able to

perform Plaintiff's past relevant work as a teacher aide. (Tr. 66). The Court finds no error in the ALJ's treatment of Dr. Goll's opinion and affirms his decision to accord the opinion no weight.

**b) Whether the ALJ applied the correct legal standards to the opinion of Dr. Hatch.**

Plaintiff argues that the ALJ distorted the opinion of Robert S. Hatch, M.D., by pretending that Dr. Hatch's opinion did not support limitations and somehow supported the ALJ's RFC finding. (Doc. 16 p. 21). Plaintiff contends that Dr. Hatch's opinion "strongly did support significant limitations and conflicted with the ALJ's findings." (Doc. 16 p. 21). Defendant contends that the ALJ properly considered Dr. Hatch's opinion. (Doc. 16 p. 23).

The record shows that Plaintiff presented to Dr. Hatch on August 7, 2012, for an evaluation after a motor vehicle accident from May 12, 2012. (Tr. 550-551). Dr. Hatch diagnosed Plaintiff with left shoulder rotator cuff tendinopathy aggravated by the motor vehicle accident, cervical strain after the motor vehicle accident, and left periscapular strain after the motor vehicle accident. (Tr. 550).

On September 11, 2012, Plaintiff returned to Dr. Hatch and reported ongoing left shoulder pain (Tr. 546). She reported that she had thought about her treatment options, but she did not want surgery or another injection. (Tr. 546). Plaintiff acknowledged that her "left shoulder was dramatically improved after one injection" but stated she wanted to hold off on any invasive treatments as her shoulder seemed to show mild improvement. (Tr. 546).

On August 15, 2012, Plaintiff returned to Dr. Hatch with continued complaints of severe left shoulder pain. (Tr. 549). Dr. Hatch noted that range of motion testing produced severe pain. (Tr. 549). Dr. Hatch performed an ultrasound-guided injection in the left subacromial region. (Tr. 549). Several minutes after the injection, Ms. Weaver reported a significant decrease in her left shoulder pain. (Tr. 549).

On August 20, 2012, Plaintiff returned to Dr. Hatch. (Tr. 548). Plaintiff reported improvement after left subacromial injection at her last clinic visit. (Tr. 548). Dr. Hatch noted that Plaintiff described debilitating pain but that she was able to sleep through the night. (Tr. 548). Dr. Hatch noted that physical exam showed Plaintiff demonstrating forward flexion of the left shoulder to 120/130 degrees and abduction to about 80 degrees. (Tr. 548). Dr. Hatch noted left upper extremity is grossly intact and that there was still global deltoid/rotator cuff tenderness. (Tr. 548).

On November 21, 2012, Dr. Hatch wrote a statement on Plaintiff's treatment history and impairments. (Tr. 543). He stated that she had a permanent shoulder injury related to her motor vehicle accident with a 4% permanent injury rating according to the American Medical Association (AMA) Guidelines. (Tr. 543). Dr. Hatch noted that Plaintiff's left shoulder had improved, but she "continued to complain of significant left shoulder symptoms as expected, i.e. expectations due to the degree of tenderness, swelling and impingement with possible associated rotator cuff tear." (Tr. 543).

In his decision, addressed the evidence from Dr. Hatch as follows:

> The claimant received conservative treatment for her allegedly severe shoulder pain. She did undergo injections with Dr. Hatch, which she reported to relieve her symptoms. However, in September 2012, she refused any surgical or injection therapy to help relieve her reported symptoms. She also reported, later in September 2012, that she was seeing gradual improvements and that she was performing shoulder exercises at home. In November 2012, Dr. Hatch said the claimant had reached maximum medical improvement and that she had a 4% PPI (Exhibit 15F). The claimant's refusal of treatment indicates that her reported shoulder pain is not as severe as she alleged. Although the claimant testified that she can lift up to 15 pounds with her right arm and nothing with her left, Dr. Hatch did not place any work-related limitations on the claimant even though he found her at MMI with a 4% PPI rating. As such, the undersigned finds that the claimant's reported lifting restrictions are not supported by the objective medical evidence and that she is able to perform within the residual functional capacity as assessed herein.

(Tr. 22-23).

Here, the Court finds that the ALJ's treatment of the record as it pertains to Dr. Hatch does not warrant remand. Despite her argument that Dr. Hatch's treatment notes strongly support significant limitations, Plaintiff does not identify any particular work-related limitation contained in Dr. Hatch's opinion that undermines the ALJ's RFC finding. As Defendant notes, the American Medical Association Guides is a method of assessing impairment and disability completely different than the approach set forth in the SSA's regulations. For example, while the AMA Guides define disability as "activity limitations and/or participation restrictions in an individual with a health condition, disorder, or disease," the Social Security Act defines disability as the "inability to engage in any substantia gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A diagnosis or a showing of a deviation from purely medical standards of bodily perfection or normality is insufficient to establish disability; "instead, the claimant must show the effects of the impairment on her *ability to work*." *Wind v. Barnhart*, 133 F.App'x 684, 690 (11th Cir. 2005). Thus, although Dr. Hatch found Plaintiff to have a permanent injury rating of 4%, it does not follow that the ALJ was required to include additional limitations in his RFC finding. The ALJ was not incorrect in stating that "Dr. Hatch did not place any work-related limitations on the claimant."

### c) Whether the ALJ applied the correct legal standards to the opinion of Dr. Thomson.

Plaintiff argues that the ALJ erred by only giving "limited weight" to the opinion of non-examining state agency physician Thomas O. Thomson, M.D., who opined that Plaintiff was capable of performing a limited range of light work. (Doc.16 p. 25). Plaintiff contends that the ALJ was not qualified to determine that Dr. Thomson's opinion was not supported by the

radiological testing evidence in the record because the ALJ is not a medical doctor. (Doc. 16 p. 26). Defendant contends that the ALJ properly weighed Dr. Thomson's opinion and substantial evidence supports his finding that the opinion should be accorded little weight. (Doc. 16 p. 26).

The record shows that Dr. Thomas reviewed Plaintiff's record on August 17, 2012. Dr. Thomas opined that Plaintiff was capable of performing light work. (Tr. 515). He opined that she "[m]ay require cane for ambulating long distances or on uneven terrain." (Tr. 515). Dr. Thomson opined that she could occasionally climb, stoop, kneel, crouch, or crawl, but frequently balance. (Tr. 517).

In his decision, the ALJ considered the opinion of Dr. Thomson as follows:

> As for the opinion evidence, on August 17, 2012, Thomas O. Thomson, a State agency consultant, reviewed the records available found the claimant capable of a range of light work. The undersigned gives limited weigh tot Dr. Thomson's opinion as the totality of the evidence available at the hearing level shows the claimant is capable of a wider range of work than determined by Dr. Thomson (Exhibits 11F, 12F). Dr. Thomson appears to base his assessment of the claimant's functional capacity on that opined by Dr. Goll, indicating the claimant could not lift greater than 20 pounds (Exhibit 9F). However, the radiological testing of the claimant's bilateral knees and her cervical, thoracic and lumbar spine show only mild degenerative changes and do not support a finding that the claimant is capable of only a light range of work (Exhibits 7F, 9F, 10F). For example, the claimant reported to Dr. Goll that she has tingling/numbness in her arms and legs, bilaterally. However, nerve studies were all within normal limits, except for a noted probable left tibial neuropathy at the left leg (Exhibit 7F/26). Dr. Thomason also opined the claimant was limited to occasional postural activities and indicated that she may need to use a cane for ambulation over long distances or uneven terrain (Exhibit 12F). However, Dr. Jacobsen noted in August 2012 that the claimant did not require an assistive device for ambulation and that her gait and station were within normal limits (Exhibit 16F/44). The objective medical evidences does not support Dr. Thomson's opinion or the claimant's allegations.

(Tr. 23).

Here, the Court finds no error in the ALJ's finding that Dr. Thomson's opinion was entitled to little weight. As a non-examining, reviewing physician, Dr. Thomson's opinion was not entitled to any deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Nevertheless, the ALJ addressed Dr. Thomson's findings at length and provided good cause, supported by substantial evidence, for discounting Dr. Thomson's opinion. The ALJ appropriately considered whether Dr. Thomson's opinion was consistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c). The ALJ explained that he rejected Dr. Thomson's finding that Plaintiff may need a cane for ambulation over long distance or uneven terrain because later records showed a cane was not necessary. Specifically, the ALJ noted that Dr. Jacobsen noted in July 2012 that Plaintiff's gait and station were within normal limits and that Plaintiff was "able to ambulate without the use of orthopedic supports or supplies." (Tr. 598).

While Plaintiff may disagree with the ALJ's findings, she has failed to show that the ALJ's opinion is not supported by such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Accordingly, the Court affirms the ALJ's finding that Dr. Thomson's opinion was entitled to little weight.

### d) **Whether the ALJ applied the correct legal standards to Plaintiff's medication side effects.**

Plaintiff contends that although the medical record shows that she has side effects from her medications that impact her ability to perform work activities, the ALJ failed to make a finding as to how these side effects impact her ability to work. (Doc. 16 p. 29-30). Plaintiff contends that the evidence of record shows additional limitations due to these side effects but that the ALJ did not account for them in his RFC finding. (Doc. 16 p. 30).

Defendant argues that the ALJ properly considered her subjective allegations regarding side effects from her medication. (Doc. 16 p. 31). Defendant contends that the ALJ provided a

detailed discussion of Plaintiff's allegations regarding the side effects from her medications and found that Plaintiff's statements were not entirely credible. (Doc. 16 p. 31). Defendant argues that the ALJ therefore implicitly found Plaintiff's subjective complaints about her side effects as not entirely credible. (Doc. 16 p. 31).

The record shows that Plaintiff was represented at the administrative hearing and both the ALJ and her attorney asked her about the side effects of her medication. (Tr. 43-44, 53). The ALJ asked Plaintiff which medications caused her to be sleepy and tired, how often she takes the medications, and how long the side effects lasted. (Tr. 53-55). In his decision, the ALJ noted that Plaintiff testified that her medications make her tired and sleepy, that she can only drive up to 15 miles because of the side effects, and that she naps during the afternoon due to the tiredness caused by her medication, Lortab. (Tr. 16).

The ALJ has a duty to inquire into possible side effects of medications taken by a claimant and to consider those side effects when determining the claimant's RFC. *Lipscomb v. Comm'r of Soc. Sec.*, 199 F.App'x 903, 906 (11th Cir. 2006). The ALJ, however, is not required to inquire into detail about side effects when a claimant is represented by counsel at a hearing. *Cherry v. Heckler*, 760 F.2d 1186, 1191 n. 7 (11th Cir. 1985).

In this case, the Court finds that the ALJ committed no error in his treatment of Plaintiff's alleged side effects. The ALJ inquired into the side effects caused by Plaintiff's medications and discussed the evidence pertaining to Plaintiff's side effects in his decision. As Defendant notes, the ALJ found Plaintiff's statements were not entirely credible, implicitly finding that her complaints about the extent of her side effects not entirely credible. Thus, contrary to Plaintiff's claim that the ALJ failed to account for side effects caused by Plaintiff's medications, the ALJ properly considered the alleged limitations and determined not to include them in his RFC finding.

While the ALJ did not specifically cite to every instance in the record showing Plaintiff's complaints of side effects, the ALJ's decision shows that he examined the record as a whole, including Plaintiff's subjective complaints. The Court affirms the ALJ's treatment of Plaintiff's alleged side effects due to medication.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 21, 2017.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties